UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JUDY WILLIAMS AND MARY WADE | * | CIVIL ACTION NO.: 18-2472 |
| | * | |
| | * | SECTION: JCZ |
| VERSUS | * | |
| | * | MAGISTRATE: DEK |
| IQS INSURANCE RISK RETENTION GROUP, INC. ET AL. | * | |
| | * | |
| *c/w* | * | |
| | * | |
| LUCINDA THOMAS | * | CIVIL ACTION NO.: 18-6113 |
| | * | |
| | * | SECTION: JCZ |
| VERSUS | * | |
| | * | MAGISTRATE: DEK |
| IQS INSURANCE RISK RETENTION GROUP, INC., ET AL. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*

Plaintiffs' Motion *in Limine* seeks to exclude arguments and/or evidence at trial that they are not entitled to recover for medical expenses paid or guaranteed by any collateral source. Defendants agree that Plaintiffs are entitled to recover medical expenses paid or guaranteed by collateral sources. Such is the law. However, without any support whatsoever, Plaintiffs' Motion assumes that Southern Magnolia Medical, LLC ("SMM") is a collateral source. It is not. As Plaintiff points out, Defendants have properly noticed the corporate depositions of Integrated Health, SMM and Medical Resources Unlimited to take place before the discovery deadline. Thus, Plaintiffs' Motion seeks to limit evidence that Defendants have not even fully obtained in discovery yet.

SMM is a litigation funding company involved in the business of engaging certain medical providers with whom SMM has pre-negotiated discount rates related to personal injury claims. In fact, it has been asserted that SMM funds ALL of Plaintiffs' counsel's personal injury cases.[1]

Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.[2] Critically, the Louisiana Supreme Court and has already specifically held that a plaintiff cannot invoke the collateral source rule to recover for medical expense write-offs negotiated by his attorney, without having first diminished his patrimony.[3] "Louisiana's jurisprudence on the collateral source rule is in accord with that of the United States Court of Appeals for the Fifth Circuit."[4]

Plaintiffs have already testified under oath that they do not know how their medical bills are being paid or funded and that they have not signed any guarantees in that regard.[5] As such, the collateral source rule does not apply. Plaintiffs also argue that payments to the medical providers by SMM are irrelevant. However, as the only actual payments made to the medical providers in this case, those payments are entirely relevant, and excluding evidence of such payments would be entirely prejudicial to Defendants—particularly where the charges and write-offs were pre-negotiated. For these and the following reasons Plaintiffs' motion should be denied.

---

[1] *See* Email from Todd Smith of MRU to Eric Stine of Integrated Health dated 9/18/17, attached hereto as **Exhibit A**.

[2] *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 (La. 10/2/15), 2015 WL 5776131 at *2, reh'g denied (Dec. 7, 2015)

[3] *Id.* at. 4.

[4] *Thibodeaux v. Wellmate*, No. 12-1375, 2016 U.S. Dist. LEXIS 67407, at *7-9 (E.D. La. May 22, 2016).

[5] *See* Deposition of Lucinda Thomas at p. 100, 104, attached hereto as **Exhibit B**; Deposition of Judy Williams at pp. 39, 63, attached hereto as Exhibit C; Deposition of Mary Wade at p. 74, attached hereto as **Exhibit D**.

2

## BACKGROUND

Plaintiffs' medical treatment in this case have been funded pursuant to agreements between their attorney, SMM and the various medical providers. SMM is a litigation funding/investment company that contracts with doctors to provide medical care for personal injury litigants.

On September 18, 2017, Plaintiffs' counsel negotiated with SMM, executing letters of guarantee formally requesting SMM "to arrange for the provision of medical services" for all three Plaintiffs for treatment of their alleged injuries allegedly sustained in the subject accident.[6] Thereafter, SMM scheduled Plaintiffs' medical treatment with the following health care providers within its network of contracted medical providers in Metairie and New Orleans, *even though the Plaintiffs live in Houma*:

(1) Dr. Peter Liechty at One Spine Institute, LLC;
(2) Dr. Joseph Zavatsky at Spine & Scoliosis Specialists;
(3) Dr. Suneil Jolly at Louisiana Pain Management;
(4) Gulf Coast Surgical Center ("GCSC"); and
(5) Magnolia Diagnostics, Inc.

SMM had contracts with each of the above listed medical providers to "purchase" grossly inflated medical bills for all of the treatment rendered by the providers to personal injury litigants. Pursuant to these contracts, the health care providers charge 60% over what they actually receive as payment in full from SMM.[7] Take the following illustration as an example: the medical provider charges $100,000.00 for treatment rendered to Plaintiff; pursuant to its

---

[6] *See* SMM *Guarantee Agreements and Letters of Protection* executed by Plaintiffs' counsel on September 18, 2017 relative to Lucinda Thomas, Judy Williams and Mary Wade, attached hereto as **Exhibit E.**

[7] *See Lien and Receivables Purchase and Assignment Agreement* between SMM and One Spine dated 12/7/17, attached hereto as **Exhibit "F"**; *Medical Lien Purchase and Servicing Agreement* between SMM and Gulf Coast Surgical Center dated 12/26/17, attached hereto as **Exhibit "G"** ; *Lien and Receivables Purchase and Assignment Agreement* between SMM and Magnolia Diagnostics, Inc., attached hereto as **Exhibit "H"** ; *Lien and Receivables Purchase and Assignment Agreement* between SMM and Spine & Scoliosis Specialists dated 4/28/18, attached hereto as **Exhibit "I"** ; and *Lien and Receivables Purchase and Assignment Agreement* between SMM and Louisiana Pain Specialists dated 9/26/17, attached hereto as **Exhibit "J"**.

3

contract with SMM, the medical provider accepts $40,000.00 (the pre-negotiated rate) as full and final payment for the services rendered. In exchange, the medical provider purports to sell/assign its rights to assert a Healthcare Lien pursuant to La. R.S. 9:4751 associated with the accounts receivable to SMM. SMM then seeks to recover the full $100,000.00, the difference ($60,000.00) being SMM's profit.

However, Plaintiffs have no agreement with SMM. Plaintiffs also have no knowledge whatsoever of the pricing agreements between SMM and its contracted providers or how their medical bills are even being paid.[8]

Below is an itemization by each Plaintiff of the total amounts billed by SMM's contracted medical providers and the payment amounts the contracted medical providers accepted for their services in this case.[9]

|  | **BILLED CHARGES** | **AMOUNT ACCEPTED** |
| --- | --- | --- |
| MARY WADE | $299,507.50 | $94,533.13 |
| JUDY WILLIAMS | $248,962.50 | $78,117.95 |
| LUCINDA THOMAS | $68,194.00 | $33,044.30 |
| **TOTAL:** | **$616,664.00** | **$205,695.38** |

Plaintiffs will attempt to recover as medical expenses the grossly inflated medical bills that were pre-negotiated and never actually going to be paid to any health care provider. In fact, the amounts on these inflated medical bills are not even real charges at all. For example, One Spine has produced two "surgery estimates" reflecting completely different charge amounts for the

---

[8] See Deposition of Lucinda Thomas at p. 100, attached hereto as **Exhibit B**; Deposition of Judy Williams at pp. 39, 63, attached hereto as **Exhibit C**; Deposition of Mary Wade at p. 48, attached hereto as **Exhibit D**.

[9] See SMM Cost Statements for treatment provided by SMM"s contracted medical providers to Lucinda Thomas, Judy Williams and Mary Wade, attached hereto as **Exhibit "K"**.

exact same procedure.[10]

A plaintiff may ordinarily recover reasonable medical expenses, both past and future, which he incurs as a result of the injury.[11] However, plaintiffs cannot recover medical expenses when the amount of those expenses are simply not real, and the product of negotiations between Plaintiffs' attorney and the provider.

Defendants are not responsible for Plaintiffs' attorney expenses for which Plaintiffs may or may not be responsible, nor are Defendants responsible for paying SMM's profits. Thus, these arbitrary and inflated full charges in no way provide a legal basis for the exclusion of actual payments made to Plaintiffs' medical providers. The inflated charges are only relevant for purposes of exposing the improper funding scheme.

Defendants intend to file their own Motion regarding what medical expenses are recoverable in this case.

## LAW AND ARGUMENT

### A. THE COLLATERAL SOURCE RULE DOES NOT APPLY

Plaintiffs' Motion *in Limine* overlooks the fundamental purpose of the collateral source rule in arguing for its application. Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.[12] In short, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits.[13]

---

[10] *See* One Spine surgery estimates for Judy Williams and Mary Wade dated November 20, 2017 and November 27, 2017, attached hereto as **Exhibit L**.
[11] *Polk v. United States*, No. 17-1164, 2018 U.S. Dist. LEXIS 55704, at *34 (E.D. La. Apr. 2, 2018).
[12] *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 (La. 10/2/15), 2015 WL 5776131 at *2, reh'g denied (Dec. 7, 2015).
[13] *Id.* (citing *Bozeman v. State*, 03–1016 p. 9 (La.7/2/04), 879 So.2d 692, 698).

5

There are two primary considerations for determining whether the collateral source rule applies: "(1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule."[14]

The Louisiana Supreme Court has ruled on the essence of the rule in such cases.[15] In *Hoffman*, the Louisiana Supreme Court adopted a "bright line rule such that attorney-negotiated discounts do not fall within the ambit of the collateral source rule because to do otherwise would invite a variety of evidentiary and ethical dilemmas for counsel."[16]

"For example, a lawyer who negotiates a discount with a medical provider and then attempts to recover the undiscounted full "cost" from the defendant might run afoul of Rule 4.1 of the Rules of Professional Conduct, entitled "Truthfulness in Statements to Others," which provides in Subsection (a) that a lawyer in the course of representing a client shall not knowingly make a false statement of material fact to a third person."[17]

1. **THE PAYMENTS AND BENEFITS WERE NOT PASSED ON TO PLAINTIFFS**

The collateral source doctrine does not apply in this case. This is not a typical insurance case where Plaintiffs paid premiums to an insurance provider to fund their medical expenses. Rather, Plaintiffs admit that they did not have anything to do with any benefit from SMM's arrangement with its contracted medical providers, and SMM's arrangement with their attorney.

---

[14] *Thibodeaux v. Wellmate*, No. 12-1375, 2016 U.S. Dist. LEXIS 67407, at *5 (E.D. La. May 22, 2016).
[15] *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 (La. 10/2/15), 2015 WL 5776131 at *2, reh'g denied (Dec. 7, 2015).
[16] *Id.*
[17] *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 ( La. 10/02/15), 209 So. 3d 702, 707.

6

The only bargain was between SMS and its contracted providers, and the benefit of this bargain is not passed on to Plaintiffs pursuant to their counsel's pre-negotiated agreement with SMS. In the end, it will be up to the factfinder to determine the reasonable amount of medical expenses in this case, and the actual payments that the medical providers received for their services are entirely relevant to this determination. As detailed in Section 2 below, these payments are the primary evidence to this issue.

### 2. PLAINTIFFS DID NOT SUFFER A DIMINUTION IN PATRIMONY

The collateral source rule also does not apply because these were litigation-related expenses for which Plaintiffs did not suffer a diminution in their patrimony. In *Hoffman*, the Louisiana Supreme Court was faced with whether a plaintiff can invoke the collateral source rule to recover for medical expense write-offs negotiated by his attorney, without having first diminished his patrimony.[18] There, the court noted that the medical statements showed discounts; that the plaintiff's attorney had an "arrangement" with certain medical providers offering discounted medical services; and that the plaintiff testified that he was unaware of the write-off or whether he had paid or given up anything in exchange for the write-off.[19] Mr. Hoffman sought "to extend the application of the collateral source rule beyond its scope of involving receipt of private insurance benefits to attorney-negotiated discounts of medical bills under the theory that, pursuant to a contingency fee arrangement, the plaintiff pays an attorney fee out of his recovery and this attorney fee effects a diminution in the plaintiff's patrimony sufficient to support application of the collateral source rule."[20]

The Hoffman court disagreed with the plaintiff's position. The court held that "[t]he plaintiff has suffered no diminution of his patrimony to obtain the write-off, and therefore, the

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at p. 10.

7

defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay."[21] The Court also rejected the plaintiff's argument that consideration for the benefit is given for attorney-negotiated medical discounts by virtue of the contractual obligation of the plaintiff to pay attorney fees, albeit only in the event of a recovery.[22] The argument was based on the assumption that the payment of an attorney's fee is additional damage suffered by the tort victim.[23] However, the Court found that "[b]ecause the tortfeasor is not liable for, and the tort victim has no right to recover, attorney fees, the payment of an attorney fee is not additional damage to the plaintiff's patrimony so as to justify the "windfall" or "double recovery" represented by the attorney- negotiated discount."[24] "Louisiana's jurisprudence on the collateral source rule is in accord with that of the United States Court of Appeals for the Fifth Circuit."[25]

Similar to *Hoffman*, Plaintiffs' counsel, through SMM, had an arrangement with certain medical providers offering discounted medical services. Likewise, Plaintiffs are unaware of the write-off, or whether they have paid anything in exchange for the write-offs. Indeed, Plaintiffs have no idea how his medical bills are being paid.[26]

Defendants anticipate that Plaintiffs will attempt to distance themselves from *Hoffman* by arguing that they suffered a diminution in their patrimony because they will owe the full amounts billed by their medical providers. This is not the case. SMS has already paid Plaintiffs' medical bills. While Plaintiffs' counsel may have agreed to pay SMS the full

---

[21] *Id.*
[22] *Id.* at p. 5.
[23] *Id.*
[24] *Id.*
[25] *Thibodeaux v. Wellmate*, No. 12-1375, 2016 U.S. Dist. LEXIS 67407, at 7-9 (E.D. La. May 22, 2016).
[26] *See* Deposition of Lucinda Thomas at p. 100, attached hereto as **Exhibit B**; Deposition of Judy Williams at pp. 39, 63, attached hereto as Exhibit C; Deposition of Mary Wade at p. 48, attached hereto as **Exhibit D**.

8

amounts of the medical bills at a later date, pursuant to a pre-negotiated letters of guarantee, Plaintiffs are not parties to such agreements.

Moreover, Plaintiffs' counsel's payment or guarantee of payment to a third party such as SMM for scheduling and arranging medical care, and other expenses are not recoverable. This is no different from the plaintiff's argument in *Hoffman* that his responsibility for attorneys' fees is a diminution in patrimony. If Plaintiffs are contractually obligated to reimburse their attorney out of their potential recovery for the inflated amounts their counsel agreed to pay to SMS as part of its services, then that is a matter between Plaintiffs and their counsel. As noted in *Hoffman*, this could lead to a number of evidentiary and ethical dilemmas, requiring an evidentiary hearing inquiring into the details of the attorney-client relationship to uncover a "diminution in patrimony."[27]

In sum, Plaintiffs were not a party to any contract with SMM and they are unaware of the arrangements between SMM and its contracted medical providers. This ignorance on the part of the Plaintiffs is fundamental.

Rule 1.8(a) of the Louisiana Code of Professional Conduct prohibits a lawyer from engaging in a business transaction with a client or knowingly acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client when the terms are unfair and unreasonable, and the client is not afforded a reasonable opportunity to obtain independent counsel. *In re Hutton*, 09-1185 ( La. 12/01/09), 25 So. 3d 767, 772.

**B.    SMM'S LIEN IS UNENFORCEABLE**

Because it is not a medical provider, SMM's litigation funding scheme constitutes a consumer loan under the Louisiana Consumer Credit Law ("LCCL"), La. R.S. 9:3510 et seq.

---

[27] *Hoffman* at 5.

This consumer loan was made without the license required by the LCCL. As such, Plaintiffs' debt, if any, to SMM is "null, void, unenforceable, and uncollectable as being contrary to the policy of this State..."[28] Thus, SMM's unenforceable loan or lien cannot be used by Plaintiff as an element of recovery from Defendants in this case.

Even if SMM's financing scheme did not constitute a consumer loan under the LCCL, which is denied, Plaintiffs should be deemed to have irrevocably assigned, transferred and conveyed all rights and interest they have to the medical providers, and ultimately to SMM, to recover for the health care debt. Consequently, Plaintiff would have no right to recover the debt from Defendants.

C. **EVEN IF PAYMENTS MADE TO PLAINTIFFS' MEDICAL PROVIDERS BY SMM WERE A COLLATERAL SOURCE, WHICH IS DENIED, THEY ARE STILL ENTIRELY RELEVANT AND EXCLUSION OF SUCH PAYMENTS WOULD BE UNDULY PREJUDICIAL TO DEFENDANTS**

Again, the payments at issue are not collateral sources under the law. Even if they were, evidence of the actual payments made by SMM and accepted by SMM's contracted medical providers is still highly relevant to this case. If such evidence were to be excluded, then the ruse perpetuated by the agreement between Plaintiffs' counsel and SMM would have succeeded. In other words, if Defendants were ultimately cast to pay these amounts, they would be paying SMM's profit and reimbursing Plaintiffs for their counsel's litigation fees. These are not recoverable expenses under the law.

The payments made from SMS to its own contracted medical providers are the primary evidence of the actual medical expenses in this case. Their exclusion would be entirely prejudicial to Defendants. This is nothing more than an attempt to inflate special damages, to increase general damages and fees, whereby, should a judgment be entered against Defendants,

---

[28] La. R.S. 9:3518.4 A(1).

they would be paying amounts that were never going to be paid to anyone but a litigation services company.

Even though they are not a collateral source, if they were they would be admissible for showing the extent that any discounts, offsets, or reductions to the Plaintiffs' medical expenses or charges have been granted or promised by any medical providers because of their retention of counsel. In *Hoffman v. 21st Century North America Ins. Co.*, the Louisiana Supreme Court held that any such discounts, offsets, or reductions are not a "collateral source."[29]

Plaintiffs are also not entitled to a blanket prohibition against the use of collateral source evidence. Louisiana Code of Evidence Article 409 states:

> **Payment of medical and similar expenses:**
> In a civil case, evidence of furnishing or offering or promising to pay expenses or losses occasioned by an injury to person or damage to property is not admissible to prove liability for the injury or damage nor is it admissible to mitigate, reduce, or avoid liability therefore. This Article does not require the exclusion of such evidence when it is offered solely for another purpose, such as to enforce a contract for payment. (Emphasis added).

This article does not bar evidence of collateral sources in all situations.

Louisiana courts have held that evidence of collateral sources of income is admissible to impeach the credibility of a witness. In *Turcich v. Baker*, the Louisiana Fifth Circuit Court of Appeal held that testimony regarding health insurance coverage was admissible to impeach the plaintiff in regards to her claim that she could not afford medical treatment.[30] Further, in *Bozeman v. Louisiana DOTD*, the Louisiana Supreme Court held that evidence of the actual amount paid by Medicaid was admissible because plaintiffs were not entitled to collect

---

[29] 2014-2279 ( La. 10/02/15), 209 So. 3d 702.
[30] *Turcich v. Baker*, 594 So.2d 505, 506-08 (La. App. 5 Cir. 1992); See also, *Le Blanc v. Acadian Ambulance Service, Inc.*, 746 So.2d 665, 671 (La. App. 3 Cir. 10/13/99) (holding that evidence of health insurance is admissible to impeach the credibility of the plaintiff).

Medicaid "write-off" amounts as damages.[31] Later, in *Benoit v. Turner Indus. Grp., L.L.C.*, the Louisiana Supreme Court expounded upon *Bozeman* and explained that a claimant would receive an improper windfall if he was allowed to recover for medical expenses that were reduced by health care providers as a result of their contractual arrangements with *Medicaid*[32]. The court explicitly noted that "[s]uch double recovery of damages is not permitted under Louisiana law."[33]

Pursuant to the language of Article 409 and the above Louisiana Supreme Court decisions, circumstances exist under which Defendants may address the issue of collateral sources of income. Raising the issue of the amount of medical treatment paid - minus costs written off by physicians and hospitals is permissible, and Defendants should not be precluded from addressing the issue of collateral sources of income with regard to the issue of the amount of medical treatment paid. This is particularly pertinent if Plaintiffs cite to an economic hardship as a reason for failure to procure medical treatment, and if Plaintiffs are unjustly enriched by a defendant paying for costs previously written off by physicians or facilities. Therefore, Plaintiffs' Motion *in Limine* regarding collateral sources of income or funds should be denied.

In addition, collateral source evidence can be introduced to show malingering or to refute claims of destitution. This evidence may also be relevant to demonstrate the Plaintiff's credibility as it relates to the interplay between his maintenance and cure benefits and his disability benefits. As a result, at a minimum, the Court should defer ruling on this motion and apply the collateral source rule at trial. This would not foreclose Defendants from making an

---

[31] *Bozeman v. Louisiana DOTD*, 879 So.2d 692, 704-06 (La. 2004).
[32] *Benoit v. Turner Indus. Grp., L.L.C.*, 2011-1130 (La. 01/24/12); 85 So. 3d 629, 635.
[33] *Id.* (citing *Gagnard v. Baldridge*, 612 So. 2d 732, 736 (La. 1993) ("Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana law unless expressly provided for by statute")).

application to introduce some evidence of collateral sources if Defendants can establish, outside the jury's presence, that the evidence should be allowed for a specific purpose other than reducing damages to be paid. Defendants submits that if such evidence were admitted, it would require an appropriate limiting instruction to ensure that the jury would not use the evidence to reduce Defendants' damages liability.

Finally, as Plaintiff points out, Defendants have properly noticed the corporate depositions of Integrated Health, SMM and Medical Resources Unlimited in this case to take place before the discovery deadline. Thus, it is clear that Plaintiffs' Motion seeks to limit evidence that Defendants have even obtained in discovery yet. As such, Plaintiffs' Motion should be denied.

## CONCLUSION

Because Plaintiffs did not incur any additional expense or suffer any diminution in their patrimony for payments made by SMM to its contracted medical providers, the collateral source rule is inapplicable, and Plaintiffs are not entitled to recover past medical expenses billed but "written off" by the medical providers. As such, Plaintiffs' Motion *in Limine* should be denied.

Respectfully submitted,

**GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, APLC**

*/s/ C. Bowman Fetzer, Jr.*
**JAMES A. PRATHER (#20595) (T.A.)**
**C. BOWMAN FETZER, JR. (#34541)**
3 Sanctuary Boulevard, Third Floor
Mandeville, Louisiana 70471
Telephone: 985-674-6680
Facsimile: 985-674-6681
***Counsel for Defendants, Southern Refrigerated Transport, Inc, IQS Insurance Risk Retention Group, Inc. and Eric Darnell Martin***

*AND*

**BRINEY FORET CORRY**

*/s/ Charles J. Foret*
**CHARLES J. FORET (#05700)**
**JASON R. GARROT (#29202)**
**BRINEY FORET CORRY**
**413 Travis Street, Suite 200**
**Post Office Drawer 70505-1367**
**Lafayette, LA 70505-1367**
**Telephone: (337) 237-4070**
**Facsimile: (337) 233-8719**
*Counsel for Zurich American Insurance Company*

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on the 8TH day of February, 2019, undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ C. Bowman Fetzer, Jr.*
**C. BOWMAN FETZER, JR.**