UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDY WILLIAMS, MARY WADE & LUCINDA THOMAS<br><br>VERSUS<br><br>IQS INSURANCE RISK RETENTION GROUP, INC., ET AL. | CIVIL ACTION NO. 18-2472<br>c/w 18-6113<br><br>JUDGE ZAINEY<br><br>MAGISTRATE DOUGLAS<br><br>APPLIES TO: ALL CASES |

## **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**

Defendants, Southern Refrigerated Transport, Inc. ("SRT"), IQS Insurance Risk Retention Group, Inc. and Eric Darnell Martin, respectfully submit this memorandum in opposition to Plaintiffs' Motion to Strike.[1] As more fully supported herein, Plaintiffs' motion should be denied.

## **FACTS AND PROCEDURAL HISTORY**

This lawsuit arises out of an alleged June 6, 2017 side-swipe accident at the intersection of Chef Menteur Highway and Downman Road in New Orleans involving a tractor trailer driven by Eric Darnell Martin, as an owner operator with SRT, and a vehicle driven by Lucinda Thomas with Judy Williams, Mary Wade and Dashontae Young as passengers.[2]

Defendants settled Dashantae Young's alleged personal injury claim on December 27, 2017. Plaintiffs, Judy Williams and Mary Wade, filed suit on March 6, 2018.[3] Plaintiff, Lucinda Thomas, filed suit on June 5, 2018.[4] These suits were consolidated on July 25, 2018.[5]

---

[1] *See* Rec. Doc. 107. Plaintiffs' Motion to Strike is noticed for submission on March 6, 2019 and Defendants have requested oral argument pursuant to Local Rule 78.1.
[2] *See* Police Report, attached hereto as **Exhibit A.**
[3] *See* Rec. Doc. 1 (Civil Action No. 18-2472)

On September 12, 2018 the Court issued a scheduling order setting the deadline to amend pleadings for October 26, 2018.[6] Meanwhile, the current discovery deadline is April 15, 2019 and this matter is set for a jury trial on June 3, 2019.[7]

Plaintiffs are seeking damages for "bodily injuries, pain and suffering, mental anguish, loss of enjoyment of life, medical expenses and permanent disability."[8] Collectively, Plaintiffs have alleged that the combined total amount of their past medical expenses exceed $750,000.00.

All three (3) Plaintiffs responded to Defendants' written discovery on August 24, 2018 and each Plaintiff stated as follows: ***"The Plaintiff is not aware of any known eyewitnesses other than the parties to the accident made the basis of this lawsuit."***[9]

Plaintiffs were deposed on September 13, 2018, and again no witnesses to the alleged accident were identified. In fact, during her deposition Lucinda Thomas was specifically asked whether she called anyone from the scene of the accident from her cell phone and she testified under oath that the only people she called were her husband, Anthony Thomas, and cousin, Cleveland Mitchell.[10] To date, Plaintiffs still have not identified any additional witnesses to the subject accident.

In November 2018 Plaintiffs' counsel contacted the undersigned and asked whether Defendants had any objection to Plaintiffs amending their pleadings beyond the deadline to add Zurich, SRT's excess insurer, as an additional defendant. The undersigned advised Plaintiffs'

---

[4] *See* Rec. Doc. 1 (Civil Action No. 18-6113).
[5] *See* Rec. Doc. 27.
[6] *See* Rec. Doc. 36.
[7] *See* Rec. Doc. 36.
[8] *See* Rec. Doc. 1-2.
[9] *See* Plaintiffs' Answers to Defendants' Interrogatories, Response No. 4, attached hereto as **Exhibit B.**
[10] *See* Deposition of Lucinda Thomas at pp. 61-64, attached hereto as **Exhibit C.**

counsel that Defendants had no objection to Plaintiffs filing their amended pleading past the deadline.[11]

On November 16, 2018 Plaintiffs filed a Second Supplemental and Amending Petition for Damages alleging that "at all times material hereto, Zurich American Insurance Company issued and maintained an umbrella and/or excess policy of insurance insuring Southern Refrigerated Transport, Inc. and Eric Darnell Martin."[12] Notably, Plaintiffs' amended pleading further prayed for judgment ***"against defendants, in an amount that will fully compensate the Plaintiff for injuries and losses..."***[13]

Accordingly, Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Second Supplemental and Amending Petition for Damages and asserted their affirmative defense of fraud.[14]

Plaintiffs failed to disclose having any discussions with Damian LaBeaud on the day of the alleged accident when asked in discovery and in their depositions and they have concealed Mr. LaBeaud's identity as a potential witness to the subject accident. Thus, due to Plaintiffs' intentional concealment of this information, Defendants did not have (and were prevented from discovering) sufficient information to assert fraud as an affirmative defense until after the deadline to amend pleadings had already passed. Indeed, Defendants did not receive Mary Wade's or Damian LaBeaud's certified cellular telephone records until after Plaintiffs filed their Second Supplemental and Amending Petition.[15] It is the cell phone records that provided the

---

[11] *See* Rec. Doc. 56 and Rec. Doc. 57.
[12] *See* Rec. Doc. 62 and 64.
[13] *Id.*
[14] *See* Rec. Doc. 102 and 103.
[15] Defendants received Mary Wade's certified cell phone records from Sprint on December 17, 2018. Damian LaBeaud's certified cell phone records were received from Sprint on January 24, 2019.

evidence of potential fraud and that calls into question the accuracy of Plaintiffs' prior discovery responses.

Since the filing of Plaintiffs' Second Supplemental and Amending Petition, both counsel for Zurich and the undersigned have made repeated requests to take the second depositions of the Plaintiffs but they have, thus far, not agreed to allow these depositions.

Plaintiffs have now moved this Court to strike Defendants' affirmative defense of fraud arguing that it was raised after the deadline for amending pleadings and does not comply with the provisions of Rule 9 of the Federal Rules of Civil Procedure. These arguments completely lack merit.

Contrary to the allegations in Plaintiffs' Motion to Strike, Defendants' affirmative defense of fraud was properly asserted and it contains very specific factual allegations for which there is evidentiary support already and is being obtained continuously. This evidence satisfies the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure.

For example, Defendants' affirmative defense specifically maintains that the alleged subject accident was intentionally staged and/or set up by Plaintiffs and Damian LaBeaud, and that Plaintiffs and LaBeaud acted in concert and/or conspired to intentionally cause and/or stage the alleged subject accident. Defendants' affirmative defense further asserts that Plaintiffs are now presenting a fraudulent claim arising out of an alleged accident that they may have intentionally staged and/or caused.

Defendants allege that they justifiably relied upon Plaintiffs' intentional and false representations, statements and/or omissions causing Defendants to sustain significant injury. As a result of the intentional acts and misrepresentations of Plaintiffs, Defendants have suffered and will continue to suffer damages to be shown at trial, including but not limited to, payment of

$20,000.00 to settle Dashontae Young's personal injury claims and over $100,000.00 in litigation fees and expenses.[16] The unlawful actions of Plaintiffs caused and/or contributed to these damages, making them liable to Defendants for all such damages that will be proven at trial.

Surprisingly, now that Defendants have asserted their affirmative defense of fraud, Plaintiffs have suddenly agreed to dismiss Zurich, with prejudice, and stipulated that their total recovery for damages against Defendants in this case will not exceed $973,390.22.[17] **Thus, assuming Plaintiffs are still seeking medical expenses in excess of $750,000.00, they have now essentially agreed to limit the amount of any general damage award they might receive at trial to only $75,000.00 for each Plaintiff.**

There is no question that Plaintiffs' sole motive for dismissing Zurich and stipulating this limit on their damages is to prevent Defendants' from taking the second depositions of the Plaintiffs and further concealing relevant facts of their conduct. However, given the circumstances, it is absolutely necessary that Defendants have the opportunity to take the second depositions of the Plaintiffs.

To the extent necessary, Defendants request leave to further amend their Answer and Affirmative Defenses to provide details concerning additional information recently obtained through their investigation that further establish that the alleged subject accident may have been intentionally set up and/or staged by Plaintiffs. A brief summary of this additional information is outlined herein.

---

[16] Deshontae Young was the passenger in the Plaintiffs' vehicle on the date of the alleged accident.
[17] *See* Rec. Doc. 123.

## LAW AND ARGUMENT

"Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."[18] In other words, "the who, what, when, and where must be laid out. . . ."[19] Defendants' affirmative defense easily satisfies this requirement.

### I. DEFENDANTS HAVE PROVIDED SUFFICIENT FACTUAL BASIS FOR THEIR ALLEGATIONS OF FRAUD TO MAKE RELIEF PLAUSIBLE

Defendants' Affirmative Defense of Fraud lays out very specific factual allegations and information, that if taken as true, make a plausible claim for relief. Defendants have alleged the "who, what, when, where and how" of their defense.

For example, Defendants' Affirmative Defense specifically identified Lucinda Thomas, Mary Wade, Judy Williams and Damian LaBeaud as the alleged perpetrators of the fraud occurring on June 6, 2017 on Chef Menteur Highway near the intersection of Downman Road. Defendants have also identified numerous connections between this alleged side-swipe accident, Damian LaBeaud, and Plaintiffs' counsel, to other individuals and lawsuits involving strikingly similar suspicious side-swipe accidents at or near the same location.

Further, Defendants have identified numerous telephone conversations that occurred at specific times, between specific individuals, immediately before and immediately after the alleged subject accident. Defendants also allege that have uncovered evidence of numerous other accidents with similar factual scenarios to the present case occurring at or near the same location.

Moreover, Defendants specifically assert that the same attorney as retained by Plaintiffs was retained in many of these other similar accidents, and that the alleged victims include Damian LaBeuad and/or known associates and relatives of Damian LaBeaud.

---

[18] *Lentz v. Trinchard*, 730 F. Supp. 2d 567, 579 (E.D. La. 2010)
[19] *Id.*

6

Taken together, these factual allegations are not conclusory allegations or legal conclusions, but rather particular factual allegations as required by Rule 9. Indeed, at this stage the Court is not required to evaluate the strength of Defendants' allegations of fraud or whether they are true.

Moreover, Defendants have not had an opportunity through discovery to properly evaluate the numerous suspicious conversations between Plaintiffs and Damian LaBeaud on the day of the subject accident because Plaintiffs' intentionally concealed and/or failed to disclose this information in both their written discovery responses and during their depositions. Defendants have obtained certified cell phone records, NOPD body camera videos, numerous police reports and lawsuits, all of which are linked to highly suspicious side-swipe accidents involving Damian LaBeaud, who Plaintiffs spoke with immediately before and after the alleged subject accident occurred.

However, to date Plaintiffs still have not identified Damian LaBeaud as a witness having relevant information in this case. Plaintiffs' failure to identify Damian LaBeaud as a witness and disclose their numerous conversations with him on the day of the subject accident supports Defendants' fraud defense.

The amount of evidence that has been discovered already regarding the staged subject accident is staggering. However, continued discovery has and will reveal even more evidence of the misrepresentations and fraudulent acts of Plaintiffs.

## II. THE AFFIRMATIVE DEFENSE OF FRAUD WAS TIMELY ASSERTED AND PLAINTIFFS' PREVENTED DEFENDANTS FROM RAISING THE DEFENSE ANY SOONER

Defendants did not object to Plaintiffs' request to file their Second Supplemental and Amending Petition past the deadline for amending pleadings. Yet, Plaintiffs now argue that Defendants' fraud defense should be stricken because it was raised after the deadline to amend

7

pleadings. Because Defendants consented to Plaintiffs' request to amend their pleadings after the deadline, and Plaintiffs sought judgment against Defendants in that amended pleading, Defendants are entitled to also amend their pleadings beyond that deadline in their answer.

More importantly, during her deposition Lucinda Thomas was specifically asked to whether she called anyone from the scene of the accident from her cell phone and she testified under oath that the only people she called were her husband Anthony Thomas and her cousin Cleveland Mitchell.[20] Defendants had no reason to suspect fraud until they received Mary Wade's and Damian LaBeaud's certified phone records, which was after Plaintiffs' Second Supplemental and Amending Petition was filed.

Accordingly, Plaintiffs' argument that they have been "blind-sided" by Defendants' fraud defense is preposterous. They obviously have known about their numerous conversations with Damian LaBeaud immediately before and immediately after the alleged subject accident, and they have known about these communications since June 6, 2017. However, Plaintiffs never disclosed this critical information to Defendants in any of their discovery responses or at their depositions. In reality, Defendants are the only ones that have been "blind-sided" in this case.

Plaintiffs' concealment of this critical information in discovery lends further support for Defendants' fraud defense. After all, why else would they intentionally hide this information from Defendants? Plaintiffs' Motion to Strike should be denied.

For these same reasons, Defendants have good cause and respectfully request leave to take the second deposition of the Plaintiffs under Rule 30(a)(2)(A), as these depositions are necessary for Defendants to adequately prepare for trial and support their fraud defense against Plaintiffs.

---

[20] *See* Deposition of Lucinda Thomas at pp. 61-64, attached hereto as **Exhibit C.**

### III. ADDITIONAL EVIDENCE RECENTLY OBTAINED

Defendants have also now received a substantial amount of additional evidence that further supports their affirmative defense of fraud and have requested leave to amend their affirmative defense of fraud to include the same. Below is a summary of this additional evidence.

#### 1. *Lucinda Thomas' Certified Cell Phone Records*

Defendants have now also received Lucinda Thomas' certified cell phone records, which confirm that she had conversations with Damian LaBeaud both immediately before and immediately after the subject accident while at the scene.[21] Defendants are still waiting to receive Judy Williams' certified cell phone records.

The phone records received thus far now establish the following updated timeline of communications on June 6, 2017, the day of the alleged subject accident:

- *10:58 am – Damian LaBeaud calls Plaintiffs' counsel*
- *12:03 pm – Mary Wade calls Damian LaBeaud*
- *12:06 pm – Lucinda Thomas calls Damian LaBeaud*
- *12:06 pm – Damian LaBeaud calls Lucinda Thomas (3 minute conversation)*
- *12:30 pm – **TIME OF ALLEGED ACCIDENT ACCORDING TO NOPD POLICE REPORT***
- *12:43 pm – Damian LaBeaud calls Lucinda Thomas*
- *12:44 pm – Plaintiffs' counsel text messages Damian LaBeaud*
- *12:52 pm – Lucinda Thomas calls Damian LaBeaud*
- *12:57 pm – Damian LaBeaud calls Lucinda Thomas*

---

[21] *See* Lucinda Thomas' certified phone records produced by AT&T in response to Defendants' Subpoena Duces Tecum, attached hereto as **Exhibit D.** NOTE: These records are provided by AT&T in the Universal Time Zone ("UTC"), which is six (6) hours ahead of central time. Thus, to convert UTC to CST and determine what time the call was received or made, simply subtract six (6) hours from the time of the call. For example, if a call is noted to have been received at 18:06 in UTC, then it was received at 12:06 pm central time.

- *1:27 pm* – *Mary Wade calls Damian LaBeaud*
- *1:31 pm* – *Lucinda Thomas calls Damian LaBeaud*
- *1:35 pm* – *Mary Wade calls Damian LaBeaud*
- *1:36 pm* – *Damian LaBeaud calls Plaintiffs' counsel*
- *1:38 pm* – *Lucinda Thomas text messages Damian LaBeaud*
- *1:43 pm* – *Damian LaBeaud calls Plaintiffs' counsel*
- *1:47 pm* – *Mary Wade calls Damian LaBeaud*
- *1:51 pm* – *Damian LaBeaud calls Mary Wade*
- *1:58 pm* – *Plaintiffs' counsel calls Damian LaBeaud*
- *2:04 pm* – *Mary Wade calls Damian LaBeaud*
- *2:05 pm* – *Lucinda Thomas calls Damian LaBeaud*
- *2:06 pm* – *Damian LaBeaud calls Lucinda Thomas*
- *2:43 pm* – *Damian LaBeaud calls Lucinda Thomas*
- *2:51 pm* – *Lucinda Thomas calls Damian LaBeaud*
- *2:56 pm* – *Damian LaBeaud calls Lucinda Thomas*
- *3:03 pm* – *Mary Wade calls Damian LaBeaud*
- *3:06 pm* – *Damian LaBeaud calls Plaintiffs' counsel*
- *3:31 pm* – *Lucinda Thomas calls Damian LaBeaud*
- *3:32 pm* – *Damian LaBeaud calls Plaintiffs' counsel*
- *4:15 pm* – *Plaintiffs' counsel text messages Mary Wade*
- *4:16 pm* – *Plaintiffs' counsel text messages Mary Wade*
- *4:16 pm* – *Mary Wade text messages Plaintiffs' counsel*
- *4:18 pm* – *Plaintiffs' counsel text messages Mary Wade*

- *4:19 pm* – *Mary Wade text messages Plaintiffs' counsel*

- *5:13 pm* – *Plaintiffs' counsel calls Mary Wade*

- *6:10 pm* – *Damian LaBeaud calls Lucinda Thomas*

- *7:08 pm* – *Lucinda Thomas text messages Damian LaBeaud*

- *8:10 pm* – *Damian LaBeaud calls Lucinda Thomas*[22]

2. **Damian LaBeaud's New Alleged Automobile Accident**

Defendants have now learned that Damian LaBeaud was involved in yet another alleged side-swipe automobile accident involving an 18-wheel tractor trailer that occurred on June 7, 2018 at the intersection of Louisa and Chickasaw St. in New Orleans.[23] Damian LaBeaud was operating a 2016 Chevrolet Malibu at that time of that accident and Bianca Brock and George Brock were passengers in the vehicle. Although he has not filed suit yet, Mr. LaBeaud has retained attorney Patrick Keating to represent him in connection with that alleged accident.[24] Defendants have also received photographs depicting Damian LaBeaud at the scene of that accident.

3. **NOPD Body Camera Evidence**

Defendants have also obtained the investigative report and body camera video footage from the New Orleans Police Department pertaining to its investigations of another suspicious side-swipe accident in which Damian LaBeaud was involved.[25] Damian LaBeaud filed suit in connection with that alleged side-swipe accident and a copy of the Petition for Damages is

---

[22] *See* Lucinda Thomas' certified phone records produced by AT&T in response to Defendants' Subpoena Duces Tecum, attached hereto as **Exhibit D.** *See* Rec. Doc. 102-4 (Mary Wade's certified phone records produced by Sprint in response to Defendants' Subpoena Duces Tecum) and *See* Rec. Doc. 102-5 (Damian LaBeaud's certified phone records produced by Sprint in response to Defendants' Subpoena Duces Tecum)
[23] *See* Police Report, attached hereto as **Exhibit E.**
[24] *See* Letter or Representation dated June 14, 2018, attached hereto as **Exhibit F.**
[25] *See* NOPD Dash Camera Video, attached hereto as **Exhibit G.** See also Rec. Doc. 102-9 (Petition for Damages filed by Damian LaBeaud in CDC Docket #16-7003 related to that accident).

11

attached to Defendants' Affirmative Defense of Fraud.[26] The video evidence from that similar side-swipe accident clearly depicts Damian LaBeaud and his unique voice can be heard speaking to the investigating officer.[27] Notably, that accident also occurred at the same Gentilly truck stop where it and countless others are currently under investigation for fraud.[28]

### 4. *Expert Analysis*

Defendants have recently retained expert Barry G. Dickey, who is certified in forensic audio and video analysis and will positively identified Damian LaBeaud as one of the men who arrived at the scene of the alleged subject accident in a silver vehicle, offered the investigating officer water and told her the false story about how the accident occurred. Mr. Dickey will also positively identify the other man in the silver vehicle with Mr. LaBeaud as being "Mario Salomon." Mr. Salomon is a known associate of Damian LaBeaud and client of Plaintiffs' counsel for his own suit arising out of a motor vehicle accident.

### 5. *Mario Salomon*

Just like Damian LaBeaud, Defendants' investigation of Mario Salomon has also revealed even more connections to other accidents and Plaintiffs' counsel, Patrick Keating.

For example, on April 20, 2018 Mario Salomon filed a lawsuit in connection with an April 25, 2017 automobile accident involving an 18 wheeler tractor trailer.[29] Notably, that alleged accident occurred just two weeks before the alleged subject accident in this case and Mr.

---

[26] *See* Rec. Doc. 102-9 (Petition for Damages - *Damian LaBeaud v. Hallmark Specialty Insurance Company, et al.*; CDC Docket #16-7003).
[27] *See* NOPD Dash Camera Video, attached hereto as **Exhibit G.**
[28] See WDSU Article dated 11/13/18, attached hereto as **Exhibit H.**
https://www.wdsu.com/article/wdsu-investigates-gentilly-truck-wrecks-called-suspicious-what-it-means-for-your-insurance-rate/24441653
[29] See **Exhibit I** – Petition for Damages – *Mario Solomon v. State Farm Mutual Automobile Insurance Company and Ray Watoya [sic]*; CDC Docket #18-3893.

Salomon was represented by Patrick Keating in that lawsuit. Meanwhile, Watoya Ray,[30] the driver of the vehicle Mr. Salomon was riding in on April 25, 2017, also filed her own lawsuit in connection with an alleged separate automobile accident that occurred on the exact same day on the same street.[31]

Additionally, Defendants have learned that Mr. Salomon's ex-wife, Kynisha Pugh, also filed a lawsuit in connection with a similar side-swipe accident that occurred on June 20, 2017, the week after the alleged subject accident on this case.[32] Pugh was represented by Patrick Keating in that case. Salomon's ex-wife also filed another lawsuit with in connection with an alleged side-swipe accident that occurred on September 6, 2017.[33] Mr. Salomon's two children, Mia Salomon and Corey Pugh, are also Plaintiffs in that lawsuit. Once again, Plaintiffs were represented by Patrick Keating.

### 6. *Angel Mathieu*

As noted in Defendants' fraud defense, Angel Mathieu, who is Damian LaBeaud's ex-girlfriend, also filed a lawsuit in connection with a similar side-swipe accident that occurred on March 30, 2017.[34] That case was removed to the United States District Court for the Eastern District of Louisiana in June 2018.[35] Angel Mathieu is represented by Patrick Keating in that lawsuit. Mathieu was also operating the 2008 Infinity FX35 identified below.

---

[30] **NOTE:** Ray Watoya was incorrectly named in the Petition. Watoya Ray's name was corrected in her Answer to Mario Salomon's Petition for Damages. See **Exhibit J**.
[31] See **Exhibit K** – Petition for Damages – *Watoya Ray v. Hallmark Specialty Insurance Company et al.*, CDC Docket #18-2599.
[32] See **Exhibit L** – Petition for Damages – *Kynisha Pugh v. State Farm Mutual Automobile Insurance Company and Shawanda Roberts*, CDC Docket #18-6065.
[33] See **Exhibit M** – Petition for Damages – *Kynisha Pugh, et al, v. Great West Casualty Company, et al.*, CDC Docket #18-8879.
[34] *See* Rec. Doc. 102-17 (Petition for Damages - *Angel Mathieu v. Scottsdale Insurance Company et al;* CDC Docket #08-3000).
[35] *See Mathieu v. Scottsdale Insurance Company et al;* EDLA Civil Action No. 18-6371.

### 7. *The 2008 Infinity FX35*

Finally, Defendants investigation has also revealed that the vehicle Mr. LaBeaud can be seen operating the NOPD dash camera video is a Silver 2008 Infinity FX.[36]



Notably, the registration history for that vehicle shows that it has been *owned by Angel Mathieu, Damian LaBeaud and Mario Salomon.*[37] Again, as noted above, Angel Mathieu has filed a lawsuit in connection with a similar side-swipe accident that allegedly occurred while she was operating the 2008 Infinity FX35.[38]

---

[36] *See* Rec. Doc. 120 (Exhibit K to Rec. Doc. 102 and 103 – DVD Dash Cam Video)
[37] *See* LexisNexis Motor Vehicle Registration Title Report for 2008 Infinity FX35, VIN#JNRAS08U08X102441, attached hereto as **Exhibit N.**
[38] *See* Rec. Doc. 102-17 (Petition for Damages - *Angel Mathieu v. Scottsdale Insurance Company et al;* CDC Docket #08-3000).

14

## Conclusion

Defendants have provided sufficient and specific factual assertions in its affirmative defense that satisfy the pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. Defendants have outlined Plaintiffs' misrepresentations as to staging and/or setting up the subject accident, and their failure to disclose critical information in discovery and at their depositions. Defendants have also specifically identified an ever-growing list of similar accidents involving parties with ties to the Plaintiffs, Damian LaBeaud and Plaintiffs' counsel. As such, Plaintiffs' Motion to Strike should be denied.

In the alternative, leave should be granted to allow Defendants an opportunity to amend their affirmative defense of fraud to include the additional evidence recently obtained. Defendants further seek leave to allow Defendants an opportunity to re-depose the Plaintiffs and take the depositions of Damian LaBeaud, Mario Salomon and Angel Mathieu.

Respectfully submitted,

**GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, APLC**

*/s/ C. Bowman Fetzer, Jr.*
**JAMES A. PRATHER (#20595) (T.A.)**
**C. BOWMAN FETZER, JR. (#34541)**
3 Sanctuary Boulevard, Third Floor
Mandeville, Louisiana 70471
Telephone: 985-674-6680
Facsimile: 985-674-6681
***Counsel for Defendants, Southern Refrigerated Transport, Inc, IQS Insurance Risk Retention Group, Inc. and Eric Darnell Martin***

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 26th day of February, 2019, undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ C. Bowman Fetzer, Jr.*
**C. BOWMAN FETZER, JR.**