UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDY WILLIAMS, ET AL. | CIVIL ACTION |
| VERSUS | NO: 18-2472 C/W 18-6113 |
| IQS INSURANCE RISK RETENTION, ET AL. | SECTION: "A" (5) |

**ORDER AND REASONS**
**REF: ALL ACTIONS**

The following motion is before the Court: **Motion in Limine (Rec. Doc. 86)** filed by Plaintiffs, Judy Williams, Mary Wade, and Lucinda Thomas. Defendants Southern Refrigerated Transport, Inc., IQS Insurance Risk Retention Group, Inc., Eric Darnell Martin, and Zurich American Insurance Co., oppose the motion. The motion, noticed for submission on February 20, 2019, is before the Court on the briefs without oral argument.

This suit arises out of personal injuries that Plaintiffs allegedly sustained in a car accident on June 6, 2017. Defendant Eric Martin was driving the other vehicle. On March 6, 2018, and June 5, 2018, Plaintiffs filed two petitions against Defendants in state court. Defendants removed both actions to this Court. All three plaintiffs underwent surgery before suit was filed.

A jury trial is scheduled to commence on June 3, 2019. (Rec. Doc. 36).

Plaintiffs now move in limine to exclude certain evidence at trial.

I.

Based on the questions asked by Defendants at the depositions of Plaintiffs' physicians, and based on the list of additional witnesses that Defendants seek to depose,

Plaintiffs have concluded that Defendants may try introduce evidence at trial as to the external source that has funded Plaintiffs' medical treatment. Specifically, Plaintiffs' counsel contracted with a litigation funding company that engages medical providers to render services at pre-negotiated discount rates to litigants in personal injury lawsuits. Plaintiffs do not dispute that Defendants have the right to question whether the medical treatments were causally related to the accident at issue, or even medically necessary, but they contend that Defendants should not be able to reference the guarantee of the medical, how the medical has been or will be paid, or that any medical charges are not owed and due. Plaintiffs argue that the collateral source rule applies to preclude Defendants from making such arguments and introducing evidence related to these issues.

Defendants agree that under Louisiana law Plaintiffs are entitled to recover medical expenses paid or guaranteed by collateral sources. (Rec. Doc. 99 at 1). Defendants argue, however, that the collateral source rule does not apply in this case because Plaintiffs have testified in their depositions that they do not know how their medical bills are being paid or funded and that they have not signed any guarantees in that regard. (*Id.* at 2). Defendants argue that Plaintiffs' counsel's payment or guarantee of payment to a third party for medical payments is not recoverable. Defendants analogize this case to *Hoffman v. 21st Century North American Insurance Co.*, 209 So. 3d 702 (La. 2015). Alternatively, Defendants argue that Plaintiffs' motion is premature because discovery is ongoing.

In a diversity case state law governs whether and to what extent the collateral source rule applies. *See Kadlec Med. Ctr. v. Lakeview Anesth. Assocs.*, 527 F.3d 412, 425-26 (5th Cir. 2008); *Parker v. NGM Ins. Co.*, No. 15-2123, 2016 WL 2625875, at *1 (May 9, 2016) (Morgan, J). Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), this Court first looks to the final decisions of the Louisiana Supreme Court in order to determine Louisiana

law. *Howe v. Scottsdale Ins. Co.*, 204 F.2d 624, 627 (5th Cir. 2000) (citing *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)). If the Louisiana Supreme Court has not ruled on an issue then a federal court must make an "Erie guess" to determine "as best it can" what the Louisiana Supreme Court would decide. *Id.* (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999)). In making an Erie guess in the absence of a ruling from the state's highest court, a federal court may look to the decisions of intermediate appellate state courts for guidance. *Id.* (citing *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998)).

The collateral source rule is a rule of evidence and damages. *Bozeman v. State of La.*, 879 So. 2d 692, 697 (La. 2004). Although in their motion Plaintiffs frame the issue as one of evidence alone, *i.e.*, that Defendants should not be allowed to admit evidence of the funding arrangement that paid for their medicals, Defendants' opposition (and Plaintiffs' reply memorandum) makes clear that the parties are also disputing the quantum of special damages that will be recoverable in light of the third party funding arrangement used in this case.

The Court begins with the damages aspect of the collateral source issue raised in this case. All three Plaintiffs underwent surgery. It is the Court's understanding that the physicians' bills have been satisfied so that the treating doctors are owed no additional money from Plaintiffs, their attorney, or any other source. It is also the Court's understanding that the medical bills were not paid by Defendants. Assuming that Defendants are at fault for causing the accident, and that Plaintiffs establish that the medical treatment was necessary and causally related to the accident for which Defendants' are at fault, the collateral source rule prohibits Defendants from reducing their liability based on the medical funding that Plaintiffs obtained independently of and without contribution

from Defendants. *See La. Dept. Transp. & Dev. V. Kan. City So. Ry.*, 846 So. 2d 734, 739 (La. 2003) (citing *Bryant v. New Orleans Pub. Serv., Inc.*, 406 So. 2d 767,768 (La. App. 4th Cir. 1981)). In other words, if found legally responsible for Plaintiffs' injuries, Defendants cannot be "exonerated from paying the full consequences of [their] act" simply because Plaintiffs' hired an attorney who contracted with an entity for provision of medical services. *Id.* at 740. The major policy reason for applying the collateral source rule to damages has been and continues to be tort deterrence. *Bozeman*, 879 So. 2d at 700. Allowing Defendants to avoid paying for medical treatment necessitated by their fault based on the funding scheme employed would render the goal of tort deterrence nugatory. Pretermitting for the moment consideration of any discounts, *at least as to the amounts that were actually paid to the physicians for treatment*, the collateral source rule applies will full force to those amounts regardless of the funding structure employed.[1] Therefore, Plaintiffs may recover those amounts as special damages in this lawsuit even if they never agreed to be personally liable for the charges.[2] Furthermore, evidence as to the collateral source that

---

[1] The Court does not glean from Defendants' opposition that they believe that the amounts that were actually paid to and accepted by the physicians were excessive. Even if the "full billed" charges had been excessive, the providers were only entitled to receive 40 percent of their bills. As to Wade and Williams, the numbers in Defendants' opposition suggest that the providers actually received much less than 40 percent. (Rec. Doc. 99, Opposition at 4). To the extent that Defendants do believe that the charges are excessive, they are free to hire their own medical experts to opine as what would be the reasonable and customary charges for the services rendered. Any such expert reports must be produced by March 15, 2019. (Rec. Doc. 36, Scheduling Order at 2).

[2] As to the actual amounts that were paid to and accepted by the medical providers on Plaintiffs' behalf, the Court is persuaded that there is no legal significance to the fact that Plaintiffs themselves did not pay for the benefit themselves or pay the charges themselves. To hold otherwise would be inconsistent with *Bozeman*, wherein the plaintiff was allowed to recover as special damages amounts that were paid by Medicaid. 879 So. 2d at 705-06. In that case the court specifically acknowledged that Medicaid is a free medical service for which the plaintiff had paid no consideration. *Id.* at 705. Likewise, in *Hoffman*, the medical services had been provided through an arrangement with the plaintiff's attorney and the attorney (not the plaintiff) had paid the actual amounts accepted by the doctors. 209 So. 3d at 704. The question whether

paid the charges is inadmissible because from an evidentiary standpoint, the collateral source rule bars the introduction of evidence that a plaintiff has received benefits or payments from a collateral source independent of the tortfeasor's procuration or contribution. *Patterson v. State Farm Mut. Auto. Ins. Co.*, 244 So. 3d 800 (La. App. 2nd Cir. 2017) (citing *Bozeman*, 879 So. 2d at 700).

The real point of contention insofar as the damages aspect of the collateral source rule is concerned is whether Plaintiffs can recover the difference between what the treating physicians billed for their services and the amounts that the physicians accepted as full payment for their services to Plaintiffs. Plaintiffs' medical bills were paid by a financing company that has contracts with medical providers who treat personal injury plaintiffs. Plaintiffs' counsel contracted with the financing company, which has been promised payment of the provider's "full billed rate." (Rec. Doc. 99-5, Exhibit E). The provider, on the other hand, is paid 40 percent of the "full billed charges." (Rec. Doc. 99-6, Exhibit F). So for example, if the physician's full billed rate for treatment was $100,000, he received at most $40,000 in full satisfaction of his bill, and the remaining $60,000 (hereinafter referred to as "the Difference") is owed by Plaintiffs' counsel to the finance company. Significantly, Plaintiffs themselves were not parties to any of these agreements,[3] and while they would

---

the plaintiff paid for the collateral source or suffered "some diminution in her patrimony" due to the availability of the benefit is of particular importance where double recovery might result from applying the collateral source rule, but this is not the determinative factor in deciding whether the collateral source rule applies. *Cutsinger v. Redfern*, 12 So. 3d 945, 954 (La. 2009). In this case, double recovery is not an issue with respect to the actual amounts that were paid to and accepted by the medical providers, but even if it were, the paramount concern of the collateral source rule is ensuring that liable parties do not escape responsibility for the damages that they cause. *See La. Dept. Transp. & Dev.*, 846 So. 2d at 740.

[3] In fact, in their depositions Plaintiffs testified that they were unaware of how their medical bills were being paid.

have presumably agreed vis à vis their attorney that the Difference must come out of their recovery as a cost of the litigation, no suggestion has been made that Plaintiffs themselves agreed to be responsible to anyone for any medical bills or for the Difference should their recovery at trial fall short.

The Court has reviewed the gamut of collateral source decisions from the Louisiana Supreme Court and from the courts of appeal in this state, and this Court's Erie determination is that under Louisiana law Plaintiffs cannot recover the Difference as an element of special damages. To be sure, in Louisiana write-offs and discounts that are akin to the Difference in this case may be recoverable and subject to the collateral source rule even if they constitute a "windfall" to the plaintiff. *See, e.g., Patterson v. State Farm Mut. Auto. Ins. Co.*, 244 So. 3d 800 (La. App. 2nd Cir. 2017) (holding that the collateral source rule applies to write-offs that medical providers negotiated with the plaintiff's health insurer); *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 180 So. 3d 557 (La. App. 5th Cir. 2015) (holding that the collateral source rule applies to the write-off where the plaintiff herself negotiated the medical discount with the provider); *Johnson v. Neill Corp.*, No. 15-430, 2015 WL 9464625 (La. App. 1st Cir. 2015) (unpublished) (holding that the collateral source rule applies in cases where medical discounts are granted as a professional courtesy). But the common thread that runs through all of these decisions is that in order to recover the undiscounted or full billed medical charge (when the physician has accepted a lesser amount), the plaintiff must have either paid for the benefit or be able to demonstrate that she suffered some diminution in her patrimony in order to be in a position to receive the benefit. This is the principle that the Supreme Court's decisions in *Hoffman* and *Bozeman* recognize.

In this case, Plaintiffs cannot establish that they paid any benefit or suffered any

diminution in their patrimony in order to obtain the discounted medical payments. The discounts were obtained via a series of contractual agreements that apparently triggered no obligations on Plaintiffs' part. Again, the Court assumes that Plaintiffs have agreed vis à vis their attorney that the Difference must come out of their recovery as a cost of the litigation, but in *Hoffman* the Supreme Court rejected the argument that this contractual obligation constitutes the type of payment or diminution in patrimony necessary to recover undiscounted medical expenses that were never incurred. *Hoffman*, 209 So. 3d at 707. The collateral source rule does not apply to the Difference so as to allow Plaintiffs to recover it as an element of special damages.[4]

Even though the Court has determined that the collateral source rule does not apply to the Difference from a damages standpoint, it does not follow that evidence of the funding arrangement in this case is admissible. The collateral source rule aside, evidence must be relevant in order to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Even relevant evidence is subject to exclusion if its probative value is substantially outweighed by danger of unfair prejudice, confusion, or undue delay. Fed. R. Evid. 403.

The Court can discern no legitimate reason for admitting evidence of the funding

---

[4] In their reply memorandum Plaintiffs cite *Kelly v. Bayou Fleet, Inc.*, No. 05-6871, 2009 WL 1668490 (E.D. La. June 12, 2009), a decision where Judge Barbier found that the defendant was responsible for the full billed charges that the financing company was owed. The critical distinction between this case and *Kelly* is that in *Kelly* the plaintiff had contracted with the financing company in order to fund his medical care and the plaintiff himself was obligated to cover the full cost of the services rendered. In this case Plaintiffs did not incur such an obligation, which again is essential to the cases that apply the collateral source rule to allow a plaintiff to recover for medical charges that were not actually paid. Simply, Plaintiffs herein are not similarly situated to the plaintiff in *Kelly*.

mechanism that was used in this case now that the Court had held that Plaintiffs cannot recover beyond what their medical providers were actually paid. The amounts that the physicians were actually paid in satisfaction of Plaintiffs' medical bills should be easily ascertainable, and In fact, in their opposition memorandum Defendants recite the amounts actually paid and accepted. (Rec. Doc. 99, Opposition at 4). The Court expects the parties to stipulate to the amounts that were actually paid to the providers, should the jury find Defendants at fault and liable for special damages.

Evidence of the third party funding arrangement with Plaintiffs' attorney has nothing to do with any issue being tried, the most significant of which is whether Defendants' negligence harmed Plaintiffs and necessitated medical intervention. It will only serve to confuse the jury and unfairly prejudice Plaintiffs to admit the evidence. The Court remains unpersuaded by Defendants' speculative suggestion that there may be other reasons to admit evidence of the funding scheme or that Plaintiffs' motion in limine is premature in light of ongoing discovery.[5]

**II.**

Plaintiffs also move to exclude any suggestion by Defendants that the jury should make an adverse inference from Plaintiffs' failure to call all of their treating physicians.

Defendants did not respond to this aspect of Plaintiffs' motion in limine.

Assuming that Plaintiffs would call fewer doctors simply to avoid presenting cumulative or unnecessary evidence, the Court agrees that allowing Defendants to argue

---

[5] The Court notes that Defendants have pending before the magistrate judge a motion for leave to take additional depositions (Rec. Doc. 116), many of which relate to the funding arrangement that the Court has now ruled to be irrelevant and evidence of which will not be admitted at trial. The Court would suggest that these depositions are likely no longer necessary and will only serve to increase costs in this case, costs for which Defendants will be responsible if Plaintiffs prevail at trial.

nefarious motives to the jury would be unfair and misleading.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion in Limine (Rec. Doc. 86)** filed by Plaintiffs, Judy Williams, Mary Wade, and Lucinda Thomas is **GRANTED IN PART AND DENIED IN PART** as explained above.

February 25, 2019

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE